# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

GREGORY DEWAYNE BARRION, )
                               )
           Plaintiff,         )
                               )
v.                            )          CV620-41
                               )
SGT. DUGGER, OFFICER,     )
TAMMIE THOMAS, UNIT      )
MANAGER JOHNSON, JOHN   )
DOES                        )
           Defendants.      )

## ORDER AND REPORT AND RECCOMENDATION

Proceeding *pro se* and *in forma pauperis*, Plaintiff Gregory Dewayne Barrion filed a 42 U.S.C. § 1983 complaint for damages against Defendants, namely "Sgt. Dugger," "CO II Tammie Thomas," "Unit Manager Johnson," and "All his code responding officers" (herein referenced as John Does), alleging he was deprived of his constitutional rights while imprisoned at Georgia State Prison in Reidsville, Georgia. Doc. 1 at 1-14.[1]  Barrion was permitted to pursue his case *in forma pauperis*, doc. 11, and he has returned the required forms. *See* docs. 12

---

[1] Barrion first filed his Complaint in the United States District Court for the Middle District of Georgia, Macon Division.  U.S. District Judge Treadwell transferred this case to this Court *sua sponte*.  Doc. 4.

& 13.  The Court now screens his Complaint under 28 U.S.C. § 1915A, which requires the immediate dismissal of any prisoner complaint that fails to state at least one actionable claim against a governmental entity or official.

## BACKGROUND

Although Barrion's Complaint provides a robust account of the events leading to the alleged constitutional violations, the Court focuses on those events which are material to his Section 1983 claims.  Briefly, Barrion had multiple unpleasant and mildly confrontational interactions with Defendant Sgt. Dugger prior to the incident giving rise to his claims. Doc. 1 at 5, 7-8.  On one occasion, he was allowed entry into the library against Dugger's wishes and in subversion of her authority.  Barrion believes Dugger had a vendetta against him because of these previous interactions.  Doc. 1 at 8, 10.

Turning to the relevant events, the Court accepts Barrion's allegations as true and recites them as such below.  *See, e.g., Bumpus v. Watts*, 448 F. App'x 3, 4 n. 1 (11th Cir. 2011).  After oversleeping on the morning of October 4, 2019, Barrion arrived tardy to his breakfast call. Doc. 1 at 8.  Although late, the door to the "head out" was still open, so

Barrion attempted to join the breakfast queue as a "straggler." *Id*.
However, he was prevented from doing so by Dugger, who purportedly
slammed the door as Barrion approached.  Doc. 1 at 8-9.

Barrion and the other stragglers were allowed to enter the cafeteria
by CO Tammie Thomas, which Barrion asserts made Dugger angry.  Doc.
1 at 9.  Barrion believes that Dugger saw Thomas' actions as an insult to
her own authority, which he asserts was already threatened due to
previous events.  *Id*. at 10.  Dugger became enraged and attempted to
prevent stragglers from eating breakfast, even though they were already
in line.  *Id*.  When Barrion retrieved his breakfast tray anyway, Dugger
asked for his name, but Barrion refused to provide it, instead choosing to
sit with his fellow inmate, Carlos Smith-Jones.  In response, Dugger
threatened to lock the compound down to stop the stragglers from eating.
Barrion told her, "I bout to eat.  You just go have to show me." *Id*.

At this time, Dugger slammed her metal detector wand onto the
table in front of Barrion so hard a breakfast tray broke, causing food to
fly onto Barrion and Smith-Jones.  Doc. 1 at 10.  As a "purely instinctive
response," Barrion "tossed" his tray toward Dugger's chest.  *Id*. at 11.
Dugger then struck Barrion in the head with the metal detector wand,

"swinging wildly." *Id*.   Barrion's next actions are best described in his own words, taken from the Complaint:

> I then moved toward instinctively, and all I remember thinking, as my arm rose toward her with a mind of it's own, "she a woman."  Immediately my hand then opened from a fist and patted the side of her head (she has a lot of hair/weeve). Wasn't blow or a slap.  More like a pat to say, "Are you serious?!"

*Id*.  Dugger then hit Barrion above his eye with the wand, but she was quickly carried away while screaming obscenities and directing the other officers not to call a code.  *Id*.  Nevertheless, Barrion heard Thomas radio for help, reporting that an officer was down.  *Id*.

Several officers rushed into the mess hall, including the CERT team.  Doc. 1 at 11.  Because Barrion had retreated, they incorrectly believed Smith-Jones to be the culprit of the cafeteria chaos.  *Id*.  CERT Williams tased Smith-Jones extensively, until his whole body took "flight," and Smith-Jones fell face first to the floor.  *Id*. at 12.  Seeing the officers attack the wrong man, Barrion felt compelled to intervene, yelling "I'm the one y'all looking for."  *Id*.  He was immediately restrained from behind by an unknown officer, who taunted, choked and tased him. *Id*.

After the incident, Barrion and Smith-Jones were taken to be examined by "Mrs. Moye" in medical, and then placed in separate, but adjacent, medical holding cells. Doc. 1 at 13. There was urine in the cells, and Barrion himself was forced to use a bottle he obtained from an orderly to keep from urinating on the floor, because the cell had no toilet. *Id*. Barrion's throat was sore from the choking, and Smith-Jones was complaining about his taser wounds. *Id*. After some time, Williams and Captain Hartmeyer communicated with the two inmates. Williams allegedly admitted the assault was the staff's fault, and Hartmeyer was indifferent to Smith-Jones' complaints of itchy wounds. *Id*. Barrion does not allege he complained to Hartmeyer, Williams, or anyone else about his throat pain. *See id*.

Hartmeyer then placed the two inmates in a stripped cell, leaving their property outside the cell on the floor in standing water from another inmate's flooded toilet. Doc. 1 at 13. Orderlies purportedly shoveled the "feces water" onto their belongings, and both inmates were forced to sleep on the cold iron beds without bedcovers or their property. *Id*. The cell was cold, because there was a large hole in the window, and even though it was winter, blowers were turned on, pulling cold air into the room. *Id*.

Although Smith-Jones received his disciplinary documents through his cell door on the same day as the mess hall incident, Barrion alleges he never received his.  Doc.1 at 14.  However, on October 27, 2019, a "DR Investigator Henry" visited Barrion's cell and proposed a "plea bargain" to both inmates.  *Id*.  Smith-Jones signed both an Offender's Rights Statement and a plea, but Barrion only received his plea offer.  Barrion told Henry he did not receive a disciplinary report, but Henry said she already obtained it from Barrion.  *Id*.  Because he was "feeling bad about hitting Ms. Dugger," Barrion signed the plea for assault without reviewing the report, and Investigator Henry left the cell.  *Id*.

Henry returned the next day to obtain Barrion's signature on his Offender's Rights Statement, but he refused, believing the delayed Offender's Rights Statement constituted an injustice and arguing that he wished to provide a statement prior to doing anything else.  Doc. 1 at 14.  Henry told him she would have to throw his prior statement away if he did not sign, but still he refused.  Henry then stormed off, and Barrion filed a grievance.  *Id*.  Although the results of the grievance are not completely clear, Barrion reports that he exhausted the grievance procedure.  *Id*. at 3.  Moreover, although it is unclear at this early stage

how or whether Barrion's plea or assault disposition was obtained, Barrion's primary request is that the assault charge be expunged from his record, so that he may qualify for early release. *Id.* at 6.

Barrion thus brings claims against Dugger, Thomas, Unit Manager Johnson, and all officers who responded to the mess hall code call on October 4th, 2019. Doc.1 at 1 & 4. Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Georgia Dept. of Corrs.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), the above allegations from Barrion's Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus*, 448 F. App'x at 4 n.1. Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). *Pro se* pleadings are "liberally construed," but they must comply with the applicable procedural rules. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005).

## ANALYSIS

Liberally construed, Barrion's Complaint alleges several potential constitutional violations, which the Court will address in turn. However,

7

as threshold matters, the Court must first address Barrion's failure to fully disclose his prior federal lawsuits, and second, Barrion's ambiguous attempt to seek relief on behalf of Smith-Jones.

Barrion filed his Complaint using a form which assists prisoners in organizing their initial pleading in a cohesive manner. The form requires the plaintiff to report any lawsuits in federal or state court dealing with facts other than those involved in the present lawsuit. Doc. 1 at 2. It further directs the prisoner to list other lawsuits on separate pages if they have filed more than one. *Id*. This information assists the Court in determining whether the prisoner may properly file a Complaint *in forma pauperis* at all. *See* 28 U.S.C. § 1915(g) (restricting prisoners from filing *in forma pauperis* if they have previously filed three or more prior Complaints deemed frivolous by a District Court). Barrion reported to the Court that he filed one lawsuit in 2020 which is pending in the "U.S. District Court: Macon Division." Doc. 1 at 2. However, he failed to report he has filed numerous other Complaints against prison officials, beginning in at least 2018. *See*, *e.g.*, *Barrion v. McLaughlin,* 5:18-cv-00281 (M.D. Ga. July 30, 2018); *Barrion v. Childs*, 5:19-cv-00446 (M.D. Ga. Nov. 12, 2019).

By signing or filing the complaint the signer certifies to the Court the factual contentions are, or at least could be, supported by evidence and that the filing is "not being presented for any improper purpose." *See* Fed. R. Civ. P. 11(b). Barrion is hereby reminded of his duties to remain wholly truthful to the Court, especially given the Court's need to observe the Prison Litigation Reform Act's ("PLRA") mandate to curtail frivolous, repetitive claims filed by prisoners. *See* 28 U.S.C. § 1915(g). Despite Barrion's omission, the Court has confirmed that even though he has filed numerous lawsuits, he has not accrued three strikes, which would preclude his proceeding *in forma pauperis* under 28 U.S.C. § 1915(g).

Next, to the extent Barrion asserts any claim on behalf of Smith-Jones, such claims are not properly before the Court and thus are not addressed below. *See Singleton v. Wulff*, 428 U.S. 106, 114 (1976) (one may not claim standing to vindicate the constitutional rights of others); *Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986) (prisoners generally lack standing to litigate another prisoner's claim); *but see* Fed. R. Civ. P. 17(c)(2) (permitting suit by third-party representatives, including a "next friend," in limited circumstances). As Barrion appears

to lack standing to pursue any claim on Smith-Jones' behalf, to the extent that he intended to assert any such claim, it should be **DISMISSED**.

The Court now turns to Barrion's claims, specifically: (1) that he was subjected to excessive force in the mess hall; (2) that he was denied adequate medical care; (3) that he was subjected to unconstitutional conditions of confinement in the medical cell; and finally, the crux of his Complaint, (4) that he was deprived of due process and thus should have the assault expunged from his record to protect his "liberty interest" in early release.

### 1. *Excessive Force*

In Eighth Amendment excessive force cases, the "core judicial inquiry . . . is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992).  Under this standard, courts look at "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted" upon the prisoner.  *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (quotation marks and citation omitted).  Ordinarily, courts weigh these factors at a later stage, such as on summary judgment after facts are

more developed, *see, e.g.*, *Stalley v. Cumbie*, 2022 WL 504018, at *9 (M.D. Fla. Feb. 19, 2022) (extensively reviewing video evidence of altercation to determine need for force and thereby, level of malice), but given Barrion's own extensive and detailed recitation of the facts here, even taking them in their most favorable light, Barrion has pleaded himself out of any possible claim.  In other words, assuming Barrion's factual assertions are true, his excessive force claim fails on its face.

"When the 'ever-present potential for violent confrontation and conflagration,' *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 132 . . . (1977), ripens into *actual* unrest and conflict, the admonition that 'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators,' *Rhodes v. Chapman,* 452 U.S. 337, 349, n. 14 (1981), carries special weight." *Whitley*, 475 U.S. at 321.  To that end, the Court gives "a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (citing *Bennett v. Parker,* 898 F.2d 1530, 1533 (11th Cir. 1990) (internal quotations omitted).  Moreover, an inmate "is not at liberty to ignore or disobey,

without consequence, the lawful orders of his custodians or the rules and regulations of a jail." *West v. Sconyers*, 2010 WL 4822084, \*7 (M.D. Ala. Nov. 3, 2010).

Barrion asserts that, instead of complying with Dugger's command to state his name, he disobeyed a direct order and ultimately struck her with both his food tray and his hand, which started a fight in the mess hall.  Doc. 1 at 10-11.  Though he seeks to convince the Court his open-handed "pat" was instinctive, well-meaning, or merely inquisitory, *id.*, it nonetheless constitutes an apparent assault or battery on a prison official, which prompted a necessary code call for restraint and an irrefutable need for a restoration of discipline.  *See Cockrell*, 510 F.3d at 1311.  His failure to quickly comply after the code call is illuminating; there was an obvious need for quick and direct action to subdue inmates during a violent disturbance.  *Compare*, *Scroggins v. Davis*, 346 F. App'x 504, 505 (11th Cir. 2009) (Scroggins disobeyed direct order and got involved in a scuffle with guards, during which he made an aggressive move toward one of them, force used not excessive) *with Johnson v. Deloach*, 692 F. Supp. 2d 1316, 1326 (M.D. Ala. 2010) (allegations of an unprovoked attack by an officer survived summary judgment).  But

instead of immediately complying, Barrion shouted for the officers to review camera footage. Doc. 1 at 12. Given these allegations, Barrion's own detailed factual description shows that the force used was necessary under the first *Whitley* factor. *Whitley*, 475 U.S. at 321.

Regarding the "relationship between the need and the amount of force that was used" Barrion contends his head was pulled back, which made it hard to breathe, and that he "had to reach both arms back up to break the hold" while listening to the officer taunt him. Doc. 1 at 12. After Barrion broke the hold, the officer reached around him and held him around his neck, choking him. *Id.* The above allegations describe Barrion's continued effort to disobey commands, break free of restraint, and a brief but forceful hold — not force which was excessive in relation to the need. Barrion has again pleaded himself out of a claim. He admits he continued to be aggressive, and in response the unknown officer briefly held him until he was subdued, resulting in discomfort. *See Ladd v. Barton*, No. CIV.A. 12-0107-WS-M, 2012 WL 4324406, at *6 (S.D. Ala. Aug. 28, 2012), *report and recommendation adopted*, No. CIV.A. 12-0107-WS-M, 2012 WL 4322084 (S.D. Ala. Sept. 20, 2012) (Plaintiff placed in

chokehold after continuing to be aggressive not considered excessive force).

Additionally, while the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321). Barrion does not allege that he sought any medical treatment or complained to anyone at all afterwards, which weighs against a viable excessive force claim.  *See Cockrell*, 510 F.3d at 1311 (the extent of injury inflicted upon the prisoner is a factor in examining whether force was excessive); *see also Bennett*, 898 F.2d at 1534 (discounting plaintiff's claim of injury as "only a conclusory allegation, unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses"); *Johnson v. Stanton*, 2014 WL 2569019, at *6-8 (S.D. Ala. June 9, 2014) (describing the relatively low degree of discomfort experienced after being choked during restraint by an officer as evident merely of a *de minimis* use of physical force) (citing *Hudson*, 503 U.S. at 9 ("The objective component of an excessive force claim 'necessarily

excludes from constitutional recognition *de minimis* uses of physical force'")).

Ultimately, Barrion's concessions that force was applied only after he refused to obey orders, threw his tray, "patted" the corrections officer on the head, and then broke free of the responding officer's restraint resulting in a hold which caused mild discomfort to him, are fatal to his claim. Doc. 1 at 12. On its face, Barrion's Complaint asserts merely efforts by the officials to "restore discipline," not "maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7. Given the deference given to prison officials and Barrion's own factual allegations, the Court determines Barrion has failed to state a cognizable claim under Section 1983 for excessive force. This claim should be **DISMISSED**.

## 2. *Inadequate Medical Care*

Next, the Court turns to the events occurring immediately after the mess hall altercation. Barrion describes being taken to "medical," and also describes pain in his throat and restricted breathing after being subdued in the mess hall. Doc. 1 at 13. However, he does not report making any complaint or receiving any diagnosis during or after his visit

to medical during which time he received an examination without issue. *Id.*

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment proscription against cruel and unusual punishment prevents prison personnel from subjecting an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. As in all Eighth Amendment claims, pleading such a violation requires that the prisoner (1) satisfy an "objective component" by alleging that the prisoner had a serious medical need; (2) satisfy a "subjective component" by alleging that the defendants were deliberately indifferent to that need; and (3) allege that the injury was caused by the defendants' wrongful conduct. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Under the objective component, "a serious medical need is . . . one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal citations and quotations omitted). The need must be so grave that if it is left

unattended, it poses a "substantial risk of serious harm." *Morrison v. City of Atlanta*, 614 F. App'x 445, 449 (11th Cir. 2015).

As in his excessive force claim, any allegation that Barrion did not receive necessary medical care is immediately discredited by the above standard and Barrion's own affirmative pleading. Barrion's own words lead the Court to the understanding that he was examined in medical and did not have any injury requiring treatment or serious complaint. Thus, Barrion has failed to allege an injury sufficiently serious to constitute an elevated risk of harm.

Moreover, Barrion reports being examined by "Mrs. Moye" while in medical. [2] Doc. 1 at 13. Thus, his allegations foreclose any allegation that Defendants were deliberately indifferent, as he concedes he was examined, and despite his detailed account, he does not allege that he complained of any pain in his throat to anyone afterwards. *See Stanton*, 2014 WL 2569019, at *6 (S.D. Ala. June 9, 2014) (describing the sensation

---

[2] The Court assumes Mrs. Moye is a medical professional employed to examine inmates' health, given the context of Barrion's factual accounting. However, if she is not a member of the prison's medical staff, Barrion may provide the appropriate objections to this Recommendation within the time allowed. Though any other scenario involving an "examination" in "medical" would be nonsensical, the Court nonetheless allows for the possibility that Barrion received no examination while in medical, and if he was not examined at all, his claim might carry more weight.

of pain resulting from choking as a relatively low degree of discomfort or, in other words, "*de minimis*"); *see also Hill v. Bryant*, 2017 WL 3585429, at *14 (N.D. Fla. June 28, 2017), *report and recommendation adopted*, 2017 WL 3581666 (N.D. Fla. Aug. 18, 2017) (sore throat not considered a serious medical need).   Accordingly, any potential claim regarding medical treatment immediately after the mess hall incident is not cognizable under 42 U.S.C. § 1983 and should be **DISMISSED**.

### 3. *Barrion's Temporary Confinement*

Next, Barrion appears to contend that he was placed in unconstitutional conditions of confinement in violation of the Eighth Amendment when he was placed in a cage and then a "strip cell" after the incident, and that he was deprived of his property during this time. Doc. 1 at 13.

The Court begins with the principle that inmates have no absolute right to bedding or clothes under the Eighth Amendment. *See Beard v. Strength*, 2008 WL 2754094, *3 (S.D. Ga. July 14, 2008) (rejecting an inmate's claim that being forced to sleep directly on the floor during periods of overcrowding violated his eighth Amendment rights) (citing *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995) ("there is no absolute

Eighth Amendment right not to be put in a cell without clothes or bedding")).  After all, "the Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349.

Moreover, Barrion's allegations foreclose his ability to establish that the conditions were objectively "serious" or "extreme," and that prison officials subjectively acted with "deliberate indifference" regarding those conditions, as required to support an unconstitutional conditions of confinement claim. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  Considering the Eleventh Circuit previously found that requiring an inmate to sleep on the bare cement floor without a mattress for five days does not violate the Eighth Amendment, *Fischer v. Ellegood*, 238 F. App'x. 428, 433 (11th Cir. 2007), and given the brevity of Barrion's stay in the stripped cell, doc. 1 at 13 (held in the cell "all night, until noon"), Barrion has failed to state a viable claim that the conditions of his confinement were objectively serious or extreme. *Chandler*, 379 F.3d at 1289 (explaining that "serious" or "extreme," means that a condition of confinement poses an unreasonable risk of serious damage to future health or safety).

19

Next, to the extent Barrion believes the temporary confiscation of his property was unlawful, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Because Barrion has a suitable post deprivation remedy available under Georgia law, *see* O.C.G.A. § 51–10–1 (wrongful conversion), and he did not indicate that such action was made unavailable to him, his property claims are likely premature.[3] *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991); *see also Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014).

Finally, to the extent Barrion alleges the disciplinary confinement itself constitutes a deprivation of his due process liberty interests, his claims must fail. In *Sandin v. Conner*, the Supreme Court compared the conditions of confinement in disciplinary segregation, administrative

---

[3] Moreover, even if Barrion's claim was not precluded, again, "some level of significance is required in order for the actions of prison officials to implicate constitutional concerns. "*De minimis* events simply do not state constitutional claims." *A'la v. Cobb*, 2000 WL 303014, *2 (6th Cir. 2000) (citing *Sandin v. Conner*, 515 U.S. 472, 483 (1995) (holding that due process protections apply only to atypical and significant deprivations). It is not clear from his allegations that the Barrion was deprived of his property for more than an insignificant amount of time.

segregation, and the general population and found that a prisoner's thirty-day confinement in disciplinary segregation did not implicate a state-created liberty interest implicating the Due Process Clause, because it did not present an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. Similarly, Barrion's allegations do not reveal atypical or significant hardship during his temporary "strip cell" confinement. Thus, Barrion has failed to state a due process claim, as well, and his allegations in this regard should be **DISMISSED**.

### 4. *Expungement and Liberty Interest in Early Release*

The crux of Barrion's Complaint appears to be that he was denied, or will be denied, the ability to complete a pre-release program due to his record of assault and the prison staff's failure to follow disciplinary and grievance reporting procedures.[4] Doc. 1 at 6. In fact, Barrion specifically alleges he possesses a liberty interest in early release but is hindered by the assault charge resulting from the plea deal he made with Investigator Henry. *Id*. Barrion's claim in this regard is properly before this Court

---

[4] Even though he includes a parenthetical which states "denied by Parole Board," it is unclear whether Barrion's early release has already been denied by the Board or eventually will be denied. However, it is immaterial to the Court's analysis.

as a due process allegation or another Eighth Amendment violation.  If he seeks to have the plea expunged, he has come to the wrong court.  Moreover, he has not plead facts sufficient to justify an award of injunctive relief.

First, Barrion has no liberty interest in early release.  The Supreme Court has stated that there are two circumstances in which a prisoner can be deprived of a liberty interest beyond the deprivation associated with the prisoner's confinement.  *See Sandin*, 515 U.S. at 484 (1995).  First, a liberty interest may arise from the "Due Process Clause of its own force," which extends procedural safeguards to a prisoner when his liberty is restrained in a way that "exceeds the sentence imposed by the court."  *Id*.  Second, states may create liberty interests by conferring certain benefits to prisoners, the deprivation of which "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id*.

Barrion has failed to state a due process claim under either rubric.  First, he does not even allege that he has been subjected to any conditions that exceed his sentence.  *See, e.g.*, *Conner v. Allen*, 2020 WL 2104943, at *9 (S.D. Ga. May 1, 2020), *adopted* 2020 WL 3163292 (S.D. Ga. June 12,

2020) (finding the withdrawal of prospective parole not a condition which exceeded the imposed sentence); *Sandin*, 515 U.S. at 484.  Second, the Eleventh Circuit has expressly recognized that Georgia inmates have no liberty interest in parole.  *Sultenfuss v. Snow*, 35 F.3d 1494, 1503 (11th Cir. 1994) (en banc).  It also is well-settled that there is no federal constitutional right to parole.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  As Barrion's sentence has not exceeded the sentence imposed by the criminal court, and he has no liberty interest in early release, he fails to state a due process claim.  Nor does the denial of parole constitute cruel and unusual punishment under the Eighth Amendment.  *Damiano v. Florida Parole & Prob. Comm'n*, 785 F.2d 929, 933 (11th Cir. 1986) ("the denial or postponement of parole is merely a disappointment rather than a punishment of cruel and unusual proportions").

However, it appears that Barrion additionally moves the Court to expunge the assault from of his record, as he believes the guards failed to follow procedure when they did not provide him with his Offender's Rights Statement.  Doc. 1 at 6.  Inferring that Barrion seeks to enjoin the parole board from considering the "plea," or that he asks the court to

compel prison officials to remove it from his record, his request cannot be granted.  Because Barrion failed to state any constitutional harm, the court finds no basis for injunctive relief.  In any event, the decision to grant or deny parole is based on many factors such as criminal history, nature of the offense, disciplinary record, employment and educational background, and more. *Fuller v. Georgia State Bd. of Pardons & Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Thus, even if the court could grant injunctive relief, it would not necessarily result in parole.

Next, even if his disciplinary "plea" was dispositive of his early release, he seeks the wrong recovery here.  State prisoners who want to challenge their conviction, their sentences, or administrative orders revoking good-time credits or equivalent sentence-shortening devices must seek *habeas corpus* relief, because they contest the "fact or duration" of custody, not the conditions of their confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (Even if the restoration of the respondents' credits would not have resulted in their immediate release, but only in shortening the length of their actual confinement, *habeas corpus* was the appropriate remedy, not Section 1983); *Clarke v. Stalder*, 154 F.3d 186 (5th Cir. 1998) (suit for loss of good-time credits may not be

brought in federal court until that "conviction" had been reversed on direct appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of habeas corpus).

Lastly, to the extent Barrion believes the alleged grievance-procedure failures caused him some constitutional harm, a "prison grievance procedure does not provide an inmate with a constitutionally protected interest." *Thomas v. Poveda*, 518 F. App'x 614, 618 (11th Cir. 2013); *see also Doe v. Moore*, 410 F.3d 1337, 1350 (11th Cir. 2005) ("State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory") (quotes omitted); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (federal prison administrative remedy procedures "do not in and of themselves create a liberty interest in access to that procedure," and "the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance").

Accordingly, whether Barrion's claims regarding early release are properly construed under the rubric of Due Process Clause constraints,

25

Eighth Amendment progeny, or constitute an appealable disposition warranting habeas relief, he has failed to state a cognizable claim. Thus any claim arising from his allegations regarding expungement, grievances, and early release should be **DISMISSED**.

### 5. *Claims Against Unit Manager Johnson*

Finally, the Court was able to glean direct factual accusations against Defendants Dugger, Thomas, and Does. However, Barrion named Unit Manager Johnson as a defendant in this action but does not allege any action taken (or not taken) by Johnson personally. *See* doc. 1 at 1. Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). A plaintiff must, therefore, plead that each defendant, through the individual's own actions, has violated the Constitution. *Rosa v. Fla. Dep't of Corr.*, 522 F. App'x 710, 714 (11th Cir. 2013). Because Barrion has not pled any facts even suggesting that Johnson personally participated in a constitutional violation, any claims against him should be **DISMISSED**.

## Conclusion

Though a *pro se* prisoner is often given an opportunity to amend his complaint at least once, "a district court need not allow amendment if the amended complaint would still be subject to dismissal." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015).  Barrion's conditions of confinement and due process claims are dead on arrival, and do not appear amendable.[5] This Court therefore reports and recommends to the district court judge that Barrion's Complaint be **DISMISSED**.

This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

---

[5] Despite the lack of any apparent basis for viable amendment, plaintiff's opportunity to object to this Report and Recommendation within 14 days of service, *see infra*, affords him an opportunity to resuscitate his case.  He may also submit an Amended Complaint during that period, if he believes it would cure the legal defects discussed above. *See Willis v. Darden*, 2012 WL 170163 at *2 n.3 (S.D. Ga. Jan. 19, 2012) (citing *Smith v. Stanley*, 2011 WL 1114503 at *1 (W.D. Mich. Jan. 19, 2011)).

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Meanwhile, it is time for plaintiff to pay his filing fee. His PLRA paperwork reflects $0 in average monthly deposits over the six-month period prior to the date of his Prison Account Statement. Doc. 13. He therefore owes a $0 initial partial filing fee. See 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Furthermore, Plaintiff's custodian (or designee) shall therefore set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount

reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.[6]

**SO ORDERED and REPORTED and RECOMMENDED,** this 22nd day of April, 2022.

_Christopher L. Ray_
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[6] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately.  In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.